24-2051 Caraballo v. City of New York Mr. Isaac, you've reserved three minutes for rebuttal. You may proceed when you're ready. Good morning, Your Honor. I'm Brian Isaac. I'm representing the notoplane propellant. I think it's fairly safe to say that this case is far less complicated than the one you just had. In that case, I'm going to keep you to your time restriction. I absolutely agree with my time. I don't think the parties disagree with a lot of the facts. I think they disagree with one conclusion of the law. I absolutely do not dispute the general rule that the stipulations of settlement are the highlight of the favor. I do not dispute the fact that my client, Pro Se, in civil court in Queens County, signed a release of $1,812.46 for a car accident case, which contained an omnibus clause that included federal civil rights claims. My position is this. We both agree that state law applies because the underlying settlement was in civil court in the City of New York. And I read the Court of Appeals decisions in Cato against Reagan, Mangini against McClurk, and Best against Kitaka as saying that the fact that the settlement is signed doesn't mean it's waived. I read the Court of Appeals decisions and the Appellate Division decisions unanimously as saying that it's a general proposition a release should not be made, should not be read, for public claims that were never intended. That's just fair. Now, can a party waive claims? 100%. Is a party required to know what they're reading? 100%. But in this case, we have a couple of factors that are different from the normal cases. First, look at the release. It's on page 22. Now, you're all smarter than I am, but I've probably read 10,000 of those releases in a 40-year career. First page, general release, property damage case. So right off the bat, we know that this release is intended to deal with a property damage case that has as much to do with a civil rights case as I do with respect to judgment. There have been a judge in my life. Then if you look at the next sentence, okay, it has the name of the case, the index number, the consideration. And if you go down to the first paragraph on line 3, it says this release and settlement constitutes complete payment. So you have to then go through the settlement documents. The first settlement document was done in court, as you know. That's page 60. That was the handwritten settlement document, which talks about settlement of, quote, this case. Not a civil rights case, this case. If you go to page 25 with the stipulation of discontinuance, it also has the name of the case. The plaintiff, the index number, the city index number. And then if you carry over to the second stipulation of settlement, which was done in focus, it actually has a second paragraph, which says that the plaintiff doesn't get paid unless he executes documents that the city sends him. So these are city documents. There is no question in my mind that nobody, and I mean nobody, fought when this property damage claim was being settled that had anything to do with the civil rights claim. I read my adversary's brief. It's a spectacularly written brief. He doesn't say anywhere that it was within the intent of the party because he can't. We know that there was a summary judgment motion made about two months after the stipulation of settlement was done. He did not raise the settlement that he released as a claim. It was a substantive claim. There was then a motion to re-argue. I didn't raise that either. So this was something that just kind of came out of nowhere. And my position very simply is that under state law, this is a case which should not be dismissed based on the signing of a release that had nothing to do with the civil rights claim. So you're saying that despite the broad and all-encompassing, nothing's left out kind of plain language of the release that your client signed, that there are indicia, the reference to property damage case and to the Queens County index number, that suggested the party's intention and that introduced ambiguity, I guess, even despite the very broad and plain language of the release on the face of it. So we don't have to worry too much about the parole evidence rule. If those elements had been missing and the release had been signed, then there might be just no ambiguity at all. And you're saying then we can also look at the city's behavior. It's mainly pointing right now to the fact that two different city attorneys dealt with the matter. And so one wasn't aware of the other, that there was this broad release with very plain language. But is that something else that we're entitled to look at under state law, the city's behavior? Yes. You summarized my position probably better than I could. But the answer to the question is very simply yes. But yes only if we discern an ambiguity, right? Yes. If you say that this is a release that was knowingly entered and that it's not ambiguous and that the case law that I'm citing doesn't apply, obviously I'm going to lose. But here's what I want you to focus on. This is directly out of Mancini against McCarthy. It's not me. This is what the court of appeals said. Releases contain standardized even ritualistic language and are given in circumstances where the parties are sometimes looking no further than the precise matter in dispute that is being settled. May I ask you, the release is the document at age 22, right? Yes. And I'm looking at the language that says that it's including but not limited to state and federal civil rights claims. So I'm not sure I am following your argument that we shouldn't assume it covers the civil rights claim that's at issue here when that's exactly what the release says it extends to. Judge, let me make myself clear. Please. I don't want to be ambiguous. I am not saying that the release doesn't say that federal civil rights claims are released. It does. I can't change the language and I can't go to a teleport and say to a teleport you went to a state. Right. You're not going to listen to me. What I'm saying is that under the law, what they call these omnibus clauses, that's the term of art that the health officials use, they can be disregarded despite the language in situations where it's clear that the release was not intended to cover that claim. But I thought that applied when we had omnibus language like any and all claims now pending. Not when a specific type of claim. I mean, it doesn't say it doesn't specifically allege medical malpractice or antitrust or any of the host of other claims, but it does specifically reference federal civil rights claims. I don't know how I can easily ignore that. Because in every one of the cases that I cite, every single one, there was a claim that the broad language of the omnibus provision covered the claim. And the courts assumed that the claims were covered. The issue was, do you apply it in a situation where it was never meant to apply? Right, but covered it broadly versus covering it specifically are two different things. Correct. And tell me which of the cases you point to have a comparable specific coverage, specific unambiguous coverage of the claimant issue. Well, I think the claim I would ask you to look at is the case Campolino v. Bragados, B-A-R-G-A-B-O-S, 9683 v. 1582 at 1584. And Nathan, I don't want to go over my time. I'll be able to deal with it no matter what. Thank you. All right. Mr. Kerfman. Thank you, Your Honor. May it please the Court, Jeff Kerfman on behalf of the City of New York. The district court properly concluded that because the release covered federal civil rights claims arising from any matter or thing whatsoever that occurred before the date of the release barred plaintiffs' federal civil rights claims alleged under Section 1983 in this action. This Court should affirm. In Valdiviezo, applying New York law, the panel, albeit in a summary order, held that a release using materially similar language should have released the issue here barred the plaintiffs' claims under Section 1983. Valdiviezo, though, allowed for an exception on evidence of mutual mistake. And here, given the circumstances that the city didn't even realize that there was a lease that it could possibly pull out of its back pocket and use against this pro se plaintiff, you know, there's every indication that this was not contemplated to cover the civil rights claims that were pending at the same time, notwithstanding the broad language that was used in the property damage. So I wonder whether there isn't a reason to conclude that there may have been mutual mistake here. I mean, the fact that the city was proceeding with summary judgment on the civil rights claims and then just came across this by chance, you know, suggests that the other attorney who negotiated the release for $1,100 had no intention and hadn't bargained with the plaintiff, had no, I mean, this wasn't really in either of the city's or the plaintiff's contemplation at the time. So, you know, it's a problem to have such plain and sweeping language referring directly to civil rights claims. But I don't see any basis in the record for believing that the city, in fact, intended or that the plaintiff intended to release the civil rights claims in signing this property damage release. Can you tell me why I'm wrong about this? I'd make a couple points, Your Honor. Number one, the terms of the release refer specifically to both claims that were known and unknown at the time the release was signed. So by its terms, even if the city attorney was not aware of the 1983 claims that were involved in this litigation at the time, by its terms, the release covers claims that the parties may not have been aware of. And secondarily, we'd emphasize that when the plaintiff entered the release, as far as the record shows, the only federal civil rights claims that the plaintiff had ongoing against the city at that time were the 1983 claims in this case. And you also argued waiver, right? But Mr. Carvalho was not represented by counsel in this matter, right? In the property damage matter? In entering the release? He was not represented by counsel. But on that point, we would emphasize that on appeal, and I think in the arguments here, we have not heard any emphasis placed on the fact that the plaintiff was pro se. We have not seen any authority suggesting that the mere fact that the plaintiff is pro se does not mean that he cannot sign a release. But we are supposed to look to the parties' intentions, and of course the language is the best expression of the parties' intentions. But there are some other objective indicia on the face of the release that just gave me pause about this pro se plaintiff accepting $1,100 and signing broad language, which is presumably pro forma language for the city. With the city also not contemplating the civil rights action that was pending separately, to which the city attorney had no authority. And now claiming at the last minute that, oh, never mind, you know, you gave it all up. Certainly, as a first point, we would reiterate that we would argue the language of this release was not ambiguous. That federal civil rights claims was not an ambiguous term, and therefore there would be no reason for the court to look to extrinsic evidence. On the point about the label of a property damage case, that label refers to the case that was being settled, but it has no bearing on the claims that were used as consideration in settling that case. And I think the same point applies to the plaintiff's argument about reference to this action or this case in the stipulation of settlement. The panel in Trump actually rejected this very argument because it confuses Atlas and Orange. A reference to settling this action doesn't mean that the plaintiff cannot use claims from a separate action as consideration of the settlement. But there's no evidence that that actually happened, right? I mean, there's no reason to believe that it did. There's – I think there's the language of the release. If I'm following your question, Your Honor, the language of the release unambiguously covers federal civil rights claims that existed or did not exist at that time – excuse me, that had accrued at the time the release was signed. Okay. If Your Honors have no further questions, we ask that the Court confirm. Thank you. Mr. Arzo? Your Honor, I did want to bring up – I don't want to go over my comment. I do want to bring up one point of procedure. In our reply brief, I brought up the Chante Smith case. I'm sure you've read it. Unfortunately, I never did it, because I'm lost at the intelligence division. But it's a three-to-two decision. It's up in the Court of Appeals. There is a briefing schedule. My brief will be filed on Monday. The other side's brief will be filed 28 days later. We then have, I think, 14 days until we reply. I do not believe that case will be heard until the earliest in the fall. That case has some differences, but it may be an informative case. I just wanted to bring that up to you. Judge Raggi, I just wanted to deal directly with your point. I wanted to read from the Kemper-Lito case, because I think it deals with your exact – your exact question to me, and I'm quoting it. Where a release – and three dots – contains specific recitals as to the claims being released, and yet contains an humblest clause to the effect that the release or releases and discharges all claims and demands whatsoever which he may have against the release city – that would be the city here – the courts have often applied the rule of justem generis and held that the general words of a release are limited to the recital of a particular claim. You see, I found that in your brief while your adversary was arguing, and I'm not sure that helps you. How I – what I understood the court to be saying in Kemper-Lito is that the specific claims that are released are going to control, and the court may not apply the omnibus one. Here there is a specific reference to civil rights claims, and therefore I can see why if they were now claiming it releases an antitrust claim, it releases a medical malpractice claim, that you might have grounds to rely on Kemper-Lito. But I don't see how Kemper-Lito excuses the explicit release of civil rights claims. And again, I would ask you – I understand the point, but if you look at the Mangini case and the Cato case and the Best case, those are releases, all of which definitionally would have released the defendant from liability, and the courts there adhere to the generic principle where it's appropriate. In situations where you have objective evidence, which you have here on the release in the settlement documents themselves, that is contrary to the New York law to construe a release any way that would release a party from a claim that they never had any intention of releasing. And that's my position. Okay, thank you. Thank you very much. Thank you. To both sides for your briefing and argument, the matter is submitted and taken under advisement.